# EXHIBIT 4

# EXHIBIT 1

FEDERAL TRADE COMMISSION
PROTECTING AMERICA'S CONSUMERS

# Advisory Opinion to Hinkle (07-09-98 )

July 9, 1998

Corbett & Kane
2000 Powell Street
Suite 1450
Emeryville, CA 94608

Re: Sections 603(d), 603(e) and 604(b)(3) of the Fair Credit Reporting Act

Dear Ms. Hinkle:

This is in response to your letter asking for a staff opinion letter regarding the application of the Fair Credit Reporting Act ("FCRA") to several employment situations. We have reprinted your questions in italics below. Our staff opinions in response follow.

*1. When a consumer reporting agency ("CRA") verifies prior employment, is it preparing an investigative consumer report?*

Determining whether such verification constitutes an "investigative consumer report" or simply a "consumer report" requires an analysis of those two definitions in the FCRA, as well as additional information about what would be involved in the verification. Section 603(d) defines a "consumer report" as any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for [one of the permissible purposes listed in Section 604].

An "investigative consumer report" is defined as a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. . . ..

An investigative consumer report is thus a type of consumer report that includes information obtained during an "interview." If a CRA simply checks facts stated on a job applicant's employment application, such as asking a prior or current employer whether an individual worked at the company during specific years, what the individual's job titles were during the employment period, and the individual's final salary, such fact-checking would not constitute an interview. A CRA that produced

for a potential employer a report based on responses to these questions would be providing a consumer report, but not an investigative consumer report. If, on the other hand, the CRA employee asked the prior or current employer to rate the individual's job performance or asked whether the individual had ever been disciplined on the job or was terminated for cause, such questioning would go beyond fact-checking and would constitute an interview. A CRA that reported the responses to these questions to a potential employer would be providing an investigative consumer report.

You note that Section 603(d)(2)(A)(i) excludes from the definition of "consumer report" "any report containing information solely as to transactions or experiences between the consumer and the person making the report." You also point out that the Commission's "Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act," 16 C.F.R. § 600 (1997), states that "[t]he exemption applies to reports limited to transactions or experiences between the consumer and the entity making the report (e.g., retail stores, hospitals, present or former employers, banks . . .)." Comment 603(d)-7(A)(1) (emphasis added). You seem to suggest that a CRA that produces a report based on its contacts with former or current employers would not be producing a consumer report at all because the information from the employers would constitute the employers' transactions or experiences with the job applicant. We disagree. Section 603(d)(2)(A)(i) excludes from the definition of "consumer report" the communication from the former or current employer to the CRA when it involves only transactions between the consumer (the job applicant) and the person making the report (the current or former employer). The subsection does not exclude from the definition of "consumer report" the communication from the CRA to the potential employer because the transactions or experiences referred to in the communication are not between the job applicant and the CRA.

*2. When the CRA interviews former or current employers to verify facts only, but the former or current employer voluntarily provides additional information, including opinions, is the CRA then preparing an "investigative consumer report"?*

If a former or current employer goes beyond simple responses to the CRA employee's fact-checking questions and offers opinions or other unsolicited information, such as statements that the individual had a drug habit or was reprimanded for poor job performance, the conversation would become an interview for purposes of the FCRA. Nonetheless, if the CRA does not include the opinions or other unsolicited information in its consumer report, the consumer report nonetheless would not be an investigative consumer report. If, however, the CRA includes the opinions or other unsolicited information in the report, the report would become an investigative consumer report, despite the fact that the CRA did not originally intend to obtain the information.

*3. Before an employer makes an adverse employment decision based on an investigative consumer report, must the employer provide the applicant with a copy of the entire investigative consumer report?*

Section 604(b)(3) states that, before an employer takes an adverse action based on a consumer report, the employer must give the consumer "a copy of the report" and a the summary of consumer rights prescribed by the Commission. In your letter, you state that, "[i]f a complete copy of the

investigative consumer report is provided to consumers, then former employers as well as other interviewees may be hesitant to respond to CRA inquiries." I have enclosed a copy of a staff opinion letter (Hahn, 7/8/98) that responds to a similar inquiry, and concludes that the section requires the employer to provide a copy of the entire report.

The views set forth in this opinion are those of the staff, and are not binding on the Commission.

Sincerely,

Thomas E. Kane